Thank you, Mr. Dewey. Our final case today is Byrne v. Black & Decker. Mr. Blatt? Good morning. May it please the Court, my name is Drew Blatt. I'm here on behalf of the Plaintiff Appellant, Mr. Steve Byrne. Mr. Blatt, I have a question about jurisdiction as to whether or not this is a final judgment. The counterclaim on invalidity, is that still outstanding? It is, Your Honor. So do we have jurisdiction to hear this appeal? Well, they have asserted invalidity. The district court... There's a counterclaim. It's part of the Decker judgment. I believe that they did... So that action is still outstanding, so it's not a final judgment for us to have jurisdiction on. We've said that in several cases. Usually, you have to take care to make sure that everything is wrapped up into a final judgment before you come here on appeal. Proceed with the rest of your argument. The district court erred by not considering whether a reasonable jury, based on the evidence that Mr. Byrne presented, could return a verdict of infringement on behalf of Mr. Byrne. Instead, the district court ignored the evidence that Mr. Byrne offered, made a factual finding that the wire edge guide of the accused trimmer did not have a surface. The 815 patent describes and claims a string trimmer, and one of the elements in the claims of the 815 patent is a guide structure. And the patent claim language calls for a guide structure that includes, and the phrase is, a generally planar flail-stabilizing surface. And in its opinion, after the court recognized that the claims should be given their ordinary and customary meaning, the court defined only the word... First of all, it looked at the phrase generally planar surface, and that was the only term that the court looked at in its opinion. And it defined the word surface, and it was the only claim that the court defined. Even if we accept the proposition that there's a surface here, we still have to figure out what generally planar means, correct? Either we do, or we have to ask the district judge to figure it out. Correct. We're not here saying that the word generally planar is not in the claims. We're simply saying that the judge only defined the word surface in its opinion. Right, but so let's focus on what generally planar means. Well, the word planar, the definition of planar is, if you simply look at the dictionary definitions, as essentially both parties have, the definition of planar is, we supplied to in our brief, is of, relating to, or lying in a claim. And in another dictionary it was of, pertaining to, or situated in a claim. So our proposed definition, if we were doing that, is that planar would be lying in a claim. And what that means, and it's, what that basically means is, for instance, if you take, for instance, a paper clip, and you put it... it has to actually have a surface which is planar. Correct, and it does, but I will suggest that the element lip is not in all the claims. It's not in Claim 40, the recitation of a lip is not... Then you've got to have a guard means. How does this wire become a guard? Well, if we look at Claim 40, Claim 40 just mentions a guide structure. It does not include the phrase guide and guard structure. It only includes the word guide structure. And that, actually that's important because I want to tie you down here. Your appeal seems to address all of the claims of this particular patent, but you're really focusing on, what, 39 through 43, or 40 through 43? Correct. The ones where there is no reference to a guard? Correct. We are not giving up on the guide guard, but our focus is, in fact, Claims 40 through 43, because it does not, those claims do not include the guide guard language. Alright, so there, but you do have to have the generally planar, PLAO stabilizing surface. That's correct. Generally planar language is in all of the 14 asserted claims. Under your theory, you're talking, you say any two points in a line? Well, that's the definition of a plane, and what we're saying is that the word is not plane, it's planar, and so the definition means lies in a plane. And what that means is that the guide guard structure, if you put it on, for instance, a table top, something that has a planar surface, if the wire edge guide lies on top of that, and if there's a surface, there's a connection between the wire edge guide and that surface, that shows that the wire edge guide has a planar surface, because it lies on the plane. It lies in a plane, and that's what we're saying. It would be like taking a paper clip and putting it down on this surface, which is a planar surface. The part that contacts the plane of this podium here, it represents the planar surface of the paper clip. But aren't you saying that the planar surface is defined by the two edges? The surface in between doesn't have to be a solid surface? Well, that's what – the district court didn't define the word planar. It didn't do it in the oral argument, and it didn't do it in its opinion. But I think you can read into the court's opinion that it chose to, in its mind, import a limitation that the word planar means solid. And we're saying that that's not what is required. There's no definition that anyone has supplied that says that the word planar means solid. And so the district court, when it talked about the openness above, below, and within the – What about surface? I'm sorry? What about surface? What about surface in terms of solidity? Well, the district court defined the surface as simply the exterior face of an object. And essentially that would be anything – any tangible object would have a surface just based on the definition. So your paper clip has a surface? Absolutely. It has a surface, and the planar surface on this paper clip is defined by definition as the surface that's lying on this planar surface here. And so when you look at the wire edge guide, the U-shaped portion that the judge is focusing on, that particular surface is planar because if you put it on – But does it have a surface that is planar? You're defining the planar part of that paper clip with a round contour by using something else, not the paper clip standing alone as having – it itself having a planar surface. In other words, the planar surface on that paper clip could vary depending upon how you change the angle of whatever you're measuring it by. It doesn't have a planar surface. You're just imposing that definition on it exterior to the item itself, whereas the claim requires it standing alone to have a planar surface. Where is that planar surface? Well, the planar surface, without having to reference this, is this – this surface here lies in a plane, and that's the definition of planar. And so the surface, basically the bottom-most edge of the round – How do I know that is the bottom-most edge is, or if I tilt it a little bit, it has a planar surface, a different – see, if I tilt it this way, it has a planar surface too. It's defined by the flat edge, and now it's got a planar surface that's different from that planar surface. Well, we're not – Well, we're not specifying that the wire edge guide has a unique planar surface. We're saying that it has a planar surface, and that's – the bottom side of the wire edge guide has a planar surface. If you take – and the way to show that is simply to put it on another plane. I mean, that's how we show that it's a planar surface. And if I tilted it a little bit, would it still be on a planar surface? It still would have a surface which is lying in a plane, and according to your definition, that's enough. So it has an infinite number of planar surfaces, and that isn't what the claim requires. It requires a, generally, planar surface that stabilizes. Correct. And interestingly, I don't think there's anything stabilizing about a surface on a circular object, is there? Well, as photographs in Dr. Houston's declaration show, in his first declaration, it shows that the string, and I believe it's 416 through 419, I believe, in the appendix, that the string actually can touch the wire edge guide. I mean, there's no dispute, if you will, about the fact that the flail, the string— Now we're back to the videotape. —as it rotates, can strike the wire edge guide. It is striking the wire edge guide as it rotates, and it strikes a different, a foreign object. And with that, I'm going to reserve the rest of my time. Okay, thank you. I know Ray Niro. Ray Niro, Jr., Your Honor. Okay. It's a pleasure to be before the court. Then this is Ray Niro, Jr. I am. Please proceed. Yes. Good morning. May it please the Court. Raymond Niro, Jr. and my colleague, Christopher Laney, on behalf of the appellee Black and Decker. Let me start with the question about what limitation is subject to review by this court. I know Judge O'Malley asked whether the Federal Circuit is going to review the general planar limitation, or should it send it back out to review by the district court. And the district court, the answer is the entire limitation, general planar, flail, stabilize, and surface, is before this court to review de novo. But we didn't get anything to review other than surface. In the written opinion, the court— We have to have a decision to review. Have we received a decision that we can review beyond the meaning of the term surface? Well, three points to that. Number one, at the appendix site 389, that's Byrne's opposition to the motion for summary judgment for non-infringement. Byrne told the district court that no construction is needed for these plain terms. That's a quote. Byrne suggests that no construction is needed. That's appendix site 389. It told the court that these terms are plain English, that you don't need to give a new definition or re-craft the terms. You can use the words themselves. They're sufficient. And that's exactly what the court did at the summary judgment hearing, which was two weeks before the written opinion came out. The court said, during the hearing, it said, I grant summary judgment. That's on the transcript. And he based it on the plain reading of the claims. The court indicated— In that hearing, he didn't really construe any claims, though. Well, at the hearing, he did indicate that a generally plainer surface said that's plain English and that's the heart of the case. And he said, the ordinary sense of the plain language, the ordinary person would understand a flat surface to be like this tabletop or like your patent drawing. That's because he was talking about a solid surface. I think he was construing plainer. At that point, he was talking about a plainer surface. And I don't think you can take the word surface completely out of context of the plain language. But in his written opinion, he says the surface has to be solid, right? And I think you agree. It seems like in your appellate brief, you don't try to defend that conclusion. Well, no, we don't. In the written opinion, the surface, he does define that as being solid. He refers to surface in quotes. In the beginning of the opinion, he says generally plainer surface. And then throughout that, he's referring back to the surface as it's used in the claims. I don't think you can just take surface completely apart from the context of the claim, which is generally plainer, flat, stabilizing surface. And that entire issue is up for this court for de novo review. The judge applied the plain language. It's clear from the transcript and from the claims themselves and from Byrne's argument that you really don't need a construction of these claims. You can just apply the literature. into the claims to say that because there's an opening in the U-shaped structure, that therefore it's not a surface. If you looked at the word surface in the complete abstract, the void of the patent and other limitations, I would agree that the black and decker unit does have a surface in the abstract. Every solid object has a surface. Exactly. In the context of the patent and the claims and the way they were applied by the court, the black and decker unit does not have a surface. It does not have a generally plainer surface. There is nothing flat. It does not have a flat face. And the other point is. Does it need a flat face to do that, though? Because the claims don't require a solid surface, as Judge O'Malley was pointing out. Couldn't you take the surface to be flat between the two stabilizing guard wires? The two wires would be, the surface would be flat between the two? What the district judge said is that it's not just a generally plainer surface. It has to stabilize the flail. The way the claims are written, this generally plainer surface has to be within a path of rotation of the rotating flail. Bearing against the flail as it rotates to stabilize that flail against wobble. And that in the specification, the only description at all of the surface is the circumferential lip, which is item 21. But that's not the claim. The claim doesn't require that. The claims are viewed in light of the specification, which only shows a flat surface. I think it only makes sense to be a flat surface when you're talking about the function of stabilizing the flail. So that's a limitation then. It's imported into the claims from the specification. We're not trying to import limitations into the claim at all. I think the language generally plainer surface by itself gets you to that point. What they're trying to do is take out the limitation of generally plainer surface. Because under their construction, plainer, you could take the edge, you could take a perfectly V-shaped object, you could take the edge of a razor and drop two points or three points on there and then superimpose this plane and say that those points are in a plainer surface. Under their construction, a razor's edge would be a generally plainer surface. And that's not consistent with anything in the file history, in the specification, in the plain meaning of the plane. We're not defining an edge, though. We're defining a surface. And a surface can be defined by two edges. Could it not? By two edges? I'm not sure if I follow you. Well, if you have two edges, just like the paper clip, there are two edges. The two side edges would define the surface in between. There would be a surface in between, right? It would not be a generally plainer surface. Why wouldn't it be generally plainer? It would be a plainer surface between the two edges. Our construction, and I think the way the court applied it in the hearing transcript, is that generally plainer references a flat surface. It has to be flat for the flail to bear against it and stabilize during rotation. Which brings me to another point, which I think is an independent basis to affirm the district court's decision. And that is the lack of evidence that was presented at the summary judgment hearing, and on the summary judgment briefing, that this component of Black and Decker's device, which they say is the flail's stabilizing surface, acts to stabilize the rotating flail. But isn't it true that the absence of a flail's stabilizing component was something that you raised in your reply brief on summary judgment and not in your initial brief? No, it was in the initial brief as well. In the initial brief, we submitted the testimony of William Lessig, who was from Black and Decker, who testified that he actually operated one of these devices in the deposition, and he testified unequivocally that that rotating flail does not bump against the wire. Well, all he said was, if you're rotating it in the abstract, holding it in the air so that it's not touching anything, not edging, that it's not in the same plane. And because the patentee bears the burden of proof, the fact is Black and Decker didn't need to submit any evidence. It merely needed to show the absence of evidence, which we did in our opening brief and in the reply brief and at the hearing. Under Rule 54, they could have gone all the way up to the hearing and submitted an affidavit. I think Mr. Burton himself was at the hearing and was looking through Black and Decker's instruction manuals. He was actively participating, trying to find evidence to support the stabilization. And the plaintiff in this case chose to stand by the first declaration of Dr. Huston, which contained no testing, no data, no analysis, no measurements. There was no deposition testimony cited by Mr. Byrne. There was nothing to present to the district court to show infringement. Isn't there a bit of a problem, though? I mean, it's kind of difficult for your expert to analyze the question of what a claim does or doesn't do if the district court's never given anybody a construction of the claim. Well, in this case, stabilization was never really even a disputed term. I think they certainly could have presented evidence that if they had it, that the Black and Decker guide structure stabilizes the claim. And they decided not to do that. I think what happened, so the review, they decided not to do that until Rule 59E motion, until after judgment was entered. Then Mr. Byrne came in with a new declaration from its expert witness. And what the court said in denying that was that there was no basis to depart from the earlier decision. And when you receive an order that's styled like that, it's reviewed under an abuse of discretion. Was it an abuse of discretion for the district court to say there was no basis to consider these new materials? And there really was no basis. It was not new evidence at all. It was the same expert that they had throughout the whole case operating a Black and Decker unit, which was available from the beginning. And it was nothing at all that was new. There was no change in controlling law. And we would submit that this court, in its Minton decision, which we cited, was faced with a very similar situation. At page 1379, the issue in that case was a summary judgment of invalidity based on sale, 102B, Barr. And in the summary judgment of invalidity granted in the materials submitted in the motion to alter or amend, the patent owner raised the experimental use exception and submitted a new affidavit from the patent donor to support that experimental use. And what the district judge did is this court characterized it. The district court tersely denied Minton's motion without clearly explaining whether it was exercising its discretion not to consider Minton's new argument, or it had considered the new argument but found the argument unconvincing. We conclude that the court took the former course. And what this court said was when there's an order almost identical to what was issued in this case denying the Rule 59e motion, not just referring to its previous order, that's an indication that the court exercised its discretion not to consider these new materials. You're not standing here saying that it doesn't have flail stabilizing function. You're just saying that they didn't prove it soon enough? No, no. I would say even if those materials were considered, there is no flail stabilizing function. You can look at the device, and it's just that U-shaped guide. And if that flail is rotating around, and if it ever did hit the guide, it's no different from hitting a rock or a fence post or anything else. There's nothing to say that that little guide is controlling or restricting the wobble of the flail. And when you read the patent, the flail stabilizing device is a 360-degree circumferential lip which the flail is bearing against the entire time. There's almost no space between the flail and that lip. That is a flail stabilizing surface. That rotates around. It's in constant contact. It's bearing against the flail stabilizing surface. And the Black and Decker unit is just a tiny fraction of the overall rotation of the flail where the guide even appears. So we submit that there's no flail stabilization at all. And even in the materials that they submitted on Rule 59E, their test doesn't show that it's the guide or the generally planar surface, what they call a generally planar surface, that's stabilizing the flail. They painted the whole thing orange, and some orange paint came off. But that doesn't show that the flail is being stabilized by a generally planar surface. But this court in Minton didn't even get to the experimental use exception, didn't even find whether this new affidavit in the experimental use was a valid argument or would have defeated summary judgment of invalidity. It simply found that there was no abuse of discretion in the district court declining to entertain a new argument. And that's exactly what happened here. There was no abuse of discretion. Before you're done, can you go to the jurisdictional argument that was raised before? I can. There is a counterclaim of invalidity in the case. The district court, when it granted summary judgment of non-infringement, entered an order. And the order contained language, or actually a separate judgment. And the judgment contained language that the entire matter was stricken from the court's topic. We understood that to mean the entire case was now ready for appeal. Can you show us that in the record? That is... So he enters a Rule 58 judgment. I do not think he... And you did not ask him to reopen your counterclaim or point out that he had an obligation to consider your counterclaim?  How are we to read this stricken language? This is hardly a term of the legal art. I understand that. We've kind of struggled with that same issue. I think, counsel, what you're going to need to do is to get a 54-B, top of the motion, non-partum to the filing of the appeal. Thank you. Without that, I don't think we have jurisdiction. That's what I was going to suggest. With the court's permission, we can accomplish that. Tomorrow morning, we can file a stipulation to have a 54-B hearing. If that would be appropriate to confer jurisdiction upon the court. I would proceed swiftly to do that. Thank you. Thank you. Blatch, you have a few minutes remaining. Thank you. One of the issues that is not apparent and has not been discussed is the issue of doctrine of equivalence. Was that in the briefs anywhere? It was not in the briefs. You haven't raised that as an issue? We have not raised that as an issue. Either below or here, right? It was because at the time that they filed the summary judgment, we had responded to an interrogatory asking for our claims of infringement, both literally and doctrine of equivalence. We provided them answers with respect to literal infringement. And we said in the interrogatory, and this was back in June of 2005, that we had reserved the right because discovery had just started. We had reserved the right to assert infringement under the doctrine of equivalence. Why isn't all of that briefed and provided to us as a question which we would answer here on appeal? Haven't you waived that? They did not raise that in their summary judgment. You're the one on appeal. Didn't you have an obligation to raise that you have an additional concern? Perhaps it would have been prudent to include that, but there was nothing. The judge did not include that as part of its ruling. And you might have cited that as error if, indeed, you had raised it to the judge so that the judge did err in overlooking that as an alternative grounds for infringement. Did you raise it with the district judge? We raised it at oral argument. So the judge was basically leading down the path of saying that he was going to grant their motion on literal infringement. And then we raised the issue of doctrine of equivalence in some of the exchange with the judge. Well, I see nothing in the record as it's been presented to this court that raises the doctrine of equivalence. And therefore, I'd recommend you proceed with what you have appealed. Very good. One of the things that counsel brought up was the language of being within a path, and that relates to the stabilization issue. And the claim language doesn't require that the rotating flail be continuously in contact with the rotating flail. It simply has to be within a path. And so as the string wobbles around, presumably in a sinusoidal fashion, the tip of it, eventually it will hit and strike and be within a path of the particular rotating flail. So within a path does not require that it be continuously, as they seem to suggest, continuously. Is it going to perform the stabilization function, though, if it's just striking one or two surfaces on this wire guide as it wobbles in a circumferential path? Well, the claims do not require a particular amount of stabilization. They just say that it stabilizes. Is it going to be stabilizing or counterstabilizing, giving it another object to bounce off of and wobble? Well, certainly it's going to touch the stabilizing surface of the wire edge guide. And by doing that, it reduces... What's the stabilizing surface? It's the bottom part. I understand what you say it is, but how is that going to stabilize it when it would seem to be just another obstacle to send it wobbling in a different direction? As the string comes around and it would strike a foreign object and then be repelled upwards towards the wire edge guide, it would then strike the wire edge guide and limit its further, essentially vertical or whatever, direction. And therefore it would... Why wouldn't it strike the wire guide and find itself wobbling downward in a direction that creates additional wobble rather than stabilizes whatever wobble might have occurred? Because I believe what happens is that as the string comes across, and this being the outermost portion of the wire edge guide, it strikes, curls up a little bit, and then runs across that wire edge guide. And so it limits the deflection. As the court pointed out, it touches and bumps the wire edge guide, providing the stabilization and providing a more accurate cut in the grass. Mr. Black, any further questions? Thank you, Mr. Black. All rise. The Honorable Court is adjourned until this afternoon at 2 o'clock.